# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### July 27, 2004 Session

## STATE OF TENNESSEE v. L.H. CUTSHALL

**Appeal from the Criminal Court for Sullivan County**
**No. S46,932    R. Jerry Beck, Judge**

---

**No. E2003-02240-CCA-R3-CD - September 16, 2004**

---

On November 13, 2002, the defendant, Leonard H. Cutshall, was indicted by the Sullivan County Grand Jury for (1) transportation of untaxed beer in excess of 100 cases and (2) depriving the State of lawful revenue, both Class E felonies.  The defendant pled guilty to these charges at a hearing held on April 21, 2003.  As part of the plea agreement, the defendant was to be sentenced to two years as a Range II offender for each count and pay a fine of $2,000 for each count.  In addition, the defendant was ordered to pay the State $511.27 in lost revenue.  At a hearing held on September 15, 2003, the trial court denied the defendant alternative sentencing and probation.  The defendant has appealed that decision to this Court.  We have found no error on the part of the trial court. Therefore, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and JAMES CURWOOD WITT, JR., JJ., joined.

Frank L. Slaughter, Jr., Bristol, Tennessee, for the appellant, L. H. Cutshall

Paul G. Summers, Attorney General & Reporter; John H. Bledsoe, Assistant Attorney General; Greeley Wells, District Attorney General; and Rebecca Davenport, Assistant District Attorney General,  for the appellee, State of Tennessee.

**OPINION**

Factual Background

The defendant, Leonard H. Cutshall, owned two taverns located in Greene County, Tennessee and one tavern located in North Carolina. On August 5, 2002, an agent of the Virginia Alcoholic Beverage Commission contacted Agent John Hones of the Tennessee Department of Revenue concerning a Tennessee resident who had been making large purchases of beer in Virginia and then transporting the beer into Tennessee. The purchases were being made at a Wal-mart in Bristol, Virginia. In a seven week period, the defendant had purchased over $21,000.00 worth of beer. A description of a black Dodge van and a license plate number was also furnished to the agent.

As a result of the information given to them by the Virginia agent, the Tennessee agents obtained the name of the defendant. They discovered that the defendant had suffered a previous seizure of untaxed alcoholic beverages in 2000, and had been stopped in Kentucky by the Alcohol Beverage Commission agents in May of 2001 with three hundred cases of beer, apparently bound for Tennessee.

Based on the defendant's prior purchases, the Virginia agents expected the defendant to reappear at the Bristol, Virginia Wal-Mart on August 6. The agents set up video surveillance on August 6 in an attempt to catch the defendant. The agents saw the Dodge van pull in with a trailer attached. The plate number and color matched the earlier description given by the Virginia agents. They watched the defendant load his vehicle with beer. The agents followed him into Tennessee where he was stopped. Upon searching the vehicle, the agents found one hundred cases of one type of beer and almost one hundred cases of a second type of beer. The agents confiscated the vehicle and the beer.

On November 13, 2002, the defendant was indicted by the Sullivan County Grand Jury for (1) transportation of untaxed beer in excess of 100 cases and (2) depriving the State of lawful revenue, both Class E felonies. The defendant pled guilty to these charges at a hearing held on April 21, 2003. It was stipulated at this hearing that the offenses arose out of the purchase of about 200 cases of beer at the Bristol, Virginia Wal-Mart on August 6, 2002, and the subsequent transportation of the beer to Tennessee. As part of the plea agreement, the defendant was to be sentenced to two years as a Range II offender for each count and pay a fine of $2,000 for each count. In addition, the defendant was ordered to pay the State $511.27 in lost revenue. At the conclusion of the guilty plea hearing, the trial court set a date for an alternative sentencing hearing.

On September 15, 2003, the trial court held an alternative sentencing hearing. The evidence at the alternative sentencing hearing included the pre-sentence report, testimony of the defendant's daughter, testimony of the individual who prepared the defendant's pre-sentence report and the agent from the Department of Revenue who was involved with the defendant's arrest. After hearing all the evidence, the trial court denied the defendant alternative sentencing and probation. The trial court based this decision on the defendant's lengthy prior record, which included convictions for

both manslaughter and first degree murder. The other offenses were primarily revenue offenses and beer offenses, such as the one sub judice. The trial court stated in its ruling that the manslaughter and first degree murder convictions were the basis of the denial of probation and alternative sentencing. This appeal followed.

## ANALYSIS

The defendant's sole issue on appeal is whether the trial court erred in sentencing the defendant to incarceration and not ordering alternative sentencing. "When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Ashby, 823 S.W.2d at 169.

In balancing these concerns, a trial court should start at the presumptive sentence, enhance the sentence within the range for existing enhancement factors, and then reduce the sentence within the range for existing mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute. See State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995). The weight given to each factor is left to the discretion of the trial court as long as it comports with the sentencing principles and purposes of our code and as long as its findings are supported by the record. Id.

A defendant "who is an especially *mitigated offender* or *standard offender* convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (emphasis added). In choosing among possible sentencing alternatives, the trial court should consider Tennessee Code Annotated section 40-35-103(5), which states, in pertinent part, "The potential or lack of potential for the rehabilitation or treatment of a defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5); State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). The trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation. See State v. Nunley, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); see also State v. Bunch, 646 S.W.2d 158, 160-61 (Tenn. 1983); State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); State v. Williamson, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995); Dowdy, 894 S.W.2d at 305-06.

The defendant pled guilty to (1) transportation of untaxed beer in excess of 100 cases and (2) depriving the State of lawful revenue, both Class E felonies. The trial court determined that the defendant was not a good candidate for probation or alternative sentencing. The trial court based this determination on the defendant's lengthy record. The defendant's first violation occurred in 1942 when the defendant was a juvenile. He was charged with violation of Internal Revenue laws and pleaded guilty. The defendant was placed on probation provided he live with his sister in Ohio. The defendant's next offense occurred in 1948, when he was again charged with violating Internal Revenue laws for distilling. He was sentenced to three years. In 1954, the defendant was charged once again with violating Internal Revenue laws and sentenced to six months and fined $1,000. In 1957, the defendant was charged with possessing, transporting and selling illegal whiskey. He was sentenced to serve five years, with another five years suspended and a $2,000 fine. In 1961, he was charged with possession of non-tax paid whiskey, but this was later dismissed by the U.S. attorney. In 1966, the defendant was convicted of manslaughter in North Carolina and sentenced to five to seven years. He was paroled in 1967. In 1970, the defendant was convicted for first degree murder and sentenced to life in prison in North Carolina. The defendant stated that he was paroled in 1981 and discharged from parole in 1986. The defendant was then charged with illegally transporting alcoholic beverage through a dry county in Laurel County, Kentucky in May of 2001. He was sentenced to two years conditional release. In making his decision, the trial judge was especially troubled by the defendant's prior convictions for both manslaughter and first degree murder.

We first point out that under Tennessee Code Annotated section 40-35-102(6) a defendant must be convicted of a Class C, D, or E felony and be an especially mitigated or standard offender to be presumed a favorable candidate for alternative sentencing. Tenn. Code Ann. § 40-35-102(6). While it is true that the defendant did plead guilty to a Class E felony, he also pleaded guilty as a Range II multiple offender. Under Tennessee Code Annotated section 40-35-106(a), a multiple offender is defined as "a defendant who has received: (1) A minimum of two (2) but no more than four (4) prior convictions within the conviction class, a higher class, or within the next two (2) lower felony classes . . . ." Clearly, the defendant's extensive criminal record, including convictions for both manslaughter and first degree murder, would qualify him to be sentenced as a Range II Multiple Offender. In fact, the defendant had more convictions than that needed to establish his range as a Range II Multiple Offender. Because he was sentenced as a Range II Multiple Offender, there is no presumption that he is a favorable candidate for alternative sentencing. Therefore, the defendant bears the burden of proving he is a favorable candidate for alternative sentencing.

A trial court must consider probation for a defendant sentenced to serve fewer than eight years. Tenn. Code Ann. § 40-35-303(a). However, a defendant seeking full probation must specifically establish suitability for full probation, as distinguished from eligibility for alternative sentencing in general. State v. Mounger, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999). In determining whether to grant probation, a trial court should consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and present conditions, the need for deterrence and the best interest of both the defendant and the public. State v. Boyd, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995). On appeal, a defendant seeking probation bears the burden of

showing that the imposed sentence is improper and that probation is in the best interest of the defendant and the public. State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997).

The defendant relies on two arguments to support his contention that he should have received probation. He argues that the convictions the trial court relied on, manslaughter and first degree murder, were thirty years old. Therefore, he contends, they should not carry any weight. The defendant states in his brief that "prior convictions that are remote, i.e. over ten (10) years old, should be related when mainly relied upon in denying alternative sentencing." The defendant does not cite any authority for this proposition. The defendant's second argument is that the trial court erred when it failed to find a mitigating factor. This mitigating factor is that the defendant's criminal conduct neither caused nor threatened serious bodily injury found at Tennessee Code Annotated section 40-35-113(1), and therefore, the trial court erred when it sentenced him to incarceration instead of an alternative sentence.

We cannot find any authority to support the defendant's position that his thirty-year-old convictions for manslaughter and first degree murder are too old to consider when sentencing a defendant. The trial court stated that these two convictions were the incidents from the defendant's prior criminal history that gave the trial court the most concern when considering alternative sentencing or probation. We agree with the trial court. The defendant has a lengthy criminal history. The majority of his prior convictions are thirty to forty years old. However, the pervasiveness of his criminal behavior throughout his lifetime, especially alcohol tax offenses, leads one to question his ability to be rehabilitated. His first offense as an adult apparently stems back to 1946. That is sixty years ago. It is obvious that the defendant has little to no regard for the revenue laws concerning alcohol. In addition, two of his convictions were of the most serious nature. There should be no limitation for consideration of a conviction for taking the life of another when considering a proper sentence. As the trial court stated at the hearing, there is no statute of limitations on bringing charges for first degree murder. Therefore, we conclude that the trial court did not abuse its discretion when it denied the defendant probation based upon his prior convictions for manslaughter and first degree murder.

We turn next to the defendant's claim that the trial court erred when it failed to consider that the defendant's conduct neither caused or threatened serious bodily injury. At the alternative sentencing hearing, the trial court found "favorable factors," that the defendant was seventy-five at the time of the hearing and there was a gap in his convictions from the time of his parole in 1986 until his most recent problems. It is true that the trial court did not apply mitigating factor Tennessee Code Annotated section 40-35-113(1) when determining the defendant's eligibility for probation. Had the court applied the factor, however, we believe it would have justified only negligible weight in the face of the prior criminal record. We discern no abuse of discretion in denying alternative sentencing.

## CONCLUSION

In light of the foregoing, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE